# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALBERTO JOVANY FUENTES
SANTOS,

                Petitioner,

      v.

SHERIFF DALE J. SCHMIDT,
SAMUEL OLSON, MARKWAYNE
MULLINS, U.S. DEPARTMENT OF
HOMELAND SECURITY, and TODD
BLANCHE,

                Respondents.

Case No. 25-CV-1901-JPS

**ORDER**

## 1.    INTRODUCTION

Petitioner Alberto Jovany Fuentes Santos ("Petitioner"), a Mexican citizen, brings this § 2241 habeas petition to challenge the constitutionality of his detention following a final order of removal. ECF No. 1. Petitioner is in the legal custody of Immigration and Customs Enforcement ("ICE") and is incarcerated at Dodge Detention Facility in Wisconsin, where Respondent Sheriff Dale J. Schmidt ("Schmidt") serves as his physical custodian. *Id.* at 2. Petitioner also names Samuel Olson, the Director of the ICE Field Office in Chicago, Markwayne Mullin, the Secretary of the Department of Homeland Security ("DHS"), DHS, and Todd Blanche, the Acting United States Attorney General as Respondents ("Federal Respondents").[1] *Id.* at 1.

---

[1] The Court will direct the Clerk of Court to substitute Acting U.S. Attorney General Todd Blanche for Pamela Bondi and Secretary of the Department of Homeland Security Markwayne Mullins for Kristi Noem. FED. R. CIV. P. 25(d).

Petitioner, who has been removed from the United States previously, was transferred to ICE custody on February 20, 2025 after serving a six-month sentence for being found in the United States after removal. *Id.* at 8. Petitioner has sought withholding of his removal based on a reasonable fear of persecution or torture. *See id.* at 8–11. On December 3, 2025, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his continued detention is unlawful on five separate grounds. ECF No. 1. Federal Respondents answered the petition, ECF No. 9; Petitioner submitted a brief in support of the petition, ECF No. 10; Federal Respondents joined by Schmidt submitted a brief in opposition to the petition, ECF No. 11; and Petitioner submitted a reply brief, ECF No. 15. In April 2026, an immigration judge found Petitioner ineligible for withholding of removal based on a prior criminal conviction, and Petitioner's appeal of that decision remains pending. ECF Nos. 16 and 17. For the reasons stated below, Petitioner is not entitled to the relief he seeks, and his petition for a writ of habeas corpus will be denied.

## 2. FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following recitation of facts from the petition and attachments thereto.[2]

Petitioner, a Mexican citizen, first arrived in the United States when he was five years old. ECF No. 1 ¶ 20. In 2013, Petitioner pled guilty to delivery of heroin. *Id.* ¶ 22. In 2014, ICE arrested Petitioner and notified him that he had been ordered removed for having been convicted of an

---

[2]Facts within this section are primarily drawn from the petition, with internal citations omitted. The Court also includes relevant legal background where helpful. For brevity, citations to facts within this section are omitted in later analysis.

aggravated felony. *Id.* ¶ 23. Petitioner asserts that this notice was procedurally inadequate for various reasons. *See id.* ¶¶ 23–26, 90–91. In December 2014, ICE removed Petitioner to Mexico. *Id.* ¶ 27.

In January 2018, ICE again arrested Petitioner in the United States and again removed him to Mexico. *Id.* ¶ 28. Petitioner re-entered the United States in June 2018. *Id.* About three years later, Petitioner was arrested for being found in the United States after deportation in violation of 8 U.S.C. § 1326 and was released on bond. *Id.* ¶¶ 30–32. Petitioner pled guilty to the charge approximately two years later and was sentenced to six months' imprisonment. *Id.* ¶¶ 34–35. On February 18, 2025, ICE reinstated Petitioner's prior removal order (Form I-871). *Id.* ¶ 37. On or about February 20, 2025, Petitioner was transferred from Bureau of Prisons' custody to ICE custody and has been held at the Dodge Detention Facility in Juneau, Wisconsin, without a bond hearing, since then. *Id.* ¶¶ 38, 54. ICE reviewed Petitioner's custody determination in May 2025 and "decided he would remain detained because his release would pose a danger to the community." *Id.* ¶ 44. It is not clear if ICE or DHS has reviewed Petitioner's custody determination since May 2025. *See* ECF No. 17 at 2 (DHS "has not completed further custody review since May 8, 2025); ECF No. 10 at 9 ("After the initial 90-day review, DHS did not conduct further review until January 27, 2026.").

This background now turns to Petitioner's recent immigration proceedings, which Petitioner asserts have been riddled with errors. A few days after transfer to ICE custody, Petitioner "participated in a reasonable fear interview with an asylum officer from U.S. Citizenship and Immigration Services." ECF No. 1 ¶ 40. A few days later, an asylum officer informed Petitioner that he had not established a reasonable probability of

persecution or torture. *Id.* ¶ 41.[3] On March 14, 2025, "DHS referred the case to [the Executive Office for Immigration Review] so an [Immigration Judge] could review the officer's findings." *Id.* ¶ 42. However, DHS labeled the case as credible fear instead of reasonable fear.[4] *Id.* Petitioner asserts that on April 23, 2025, an immigration judge "unambiguously vacated the asylum officer's decision" but, in doing so, "referred to both reasonable fear and credible fear throughout the hearing." *Id.* ¶ 43.

Approximately five months later, the Immigration Judge vacated their April 23rd order because the case had been incorrectly referred for credible fear review; the Immigration Judge "instructed DHS to serve a new Form I-863 to initiate [r]easonable [f]ear . . . proceedings." *Id.* ¶ 46.[5] DHS

---

[3]Paragraphs 41, 42, and 53 indicate that certain events occurred in 2024. The Court assumes that these are scrivener's errors and Petitioner means 2025.

[4]"Credible fear" is a lower standard than "reasonable fear." *Paigne v. Noem et al.*, No. 3:26-CV-336-CCB-SJF, 2026 WL 2055990, at *2 (N.D. Ind. July 16, 2026). "The process for applying for withholding of removal depends on whether the alien is subject to the standard removal proceedings or a reinstated order of removal. . . . [B]ecause an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal. . . . If the asylum officer concludes that the alien has a reasonable fear, he will refer the matter to an immigration judge for initiation of withholding-only proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021) (internal citations omitted).

[5]"An immigration officer will sign and deliver a Form I-863 to an alien in the following cases: (i) If an asylum officer determines that the alien does not have a credible fear of persecution or torture, and the alien requests a review of that determination by an immigration judge; (ii) If, in accordance with section 235(b)(1)(C) of the Act, an immigration officer refers an expedited removal order entered on an alien claiming to be a lawful permanent resident, refugee, asylee, or U.S. citizen for whom the officer could not verify such status to an immigration judge for review of the order; or (iii) If an immigration officer refers an applicant in accordance with the provisions of § 208.2(c)(1) or (2) of this chapter to an immigration judge for an asylum- or withholding-only hearing." 8 CFR § 235.6(a)(2).

then issued a Form I-863 "not to initiate reasonable fear proceedings but to commence withholding-only proceedings." *Id.* ¶ 47; *see also* ECF No. 1-19. The form said that an asylum officer made an affirmative finding that Petitioner *did* have a reasonable fear of persecution or torture but also included the March paperwork where an asylum officer found that Petitioner *did not* have a reasonable fear of persecution or torture. ECF No. 1-19; *see also* ECF No. 1 ¶ 47. The Executive Office of Immigration Review scheduled Petitioner's withholding-only proceeding for September 29, 2025. ECF No. 1 ¶ 48. Ultimately, Petitioner alleges that these events delayed his withholding-only proceedings from April 23, 2025 to September 29, 2025. *Id.* ¶ 71.

From September through December, Petitioner requested continuations to pursue subpoenas and Freedom of Information Act requests seeking information related to his prior assistance to law enforcement. *See id.* ¶¶ 49–50, 52–53; *id.* ¶ 71. Petitioner filed the instant habeas petition in December 2025. ECF No. 1. On April 22, 2026, after hearing testimony from Petitioner and at least one witness, the Immigration Judge "denied Petitioner's application [for protection under the Convention Against Torture], concluding that Petitioner's heroin-distribution conviction rendered him ineligible for withholding of removal and that Petitioner failed to demonstrate the substantial risk of torture necessary to establish entitlement to deferral of removal." ECF No. 16; *see* ECF No. 16-1 at 7, 11. Petitioner has appealed this decision to the Board of Immigration Appeals and, if relief is denied there, intends to appeal to the Seventh Circuit. ECF No. 17.

Petitioner has remained in ICE custody for over seventeen months as of this Order and has not received a bond hearing. ECF Nos. 1 and 17.

Federal Respondents assert that 8 U.S.C. § 1231(a)(6) authorizes Petitioner's continued detention. ECF No. 9 at 2.

Petitioner brings five counts in support of habeas relief. ECF No. 1. First, he argues that his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment ("Count One"). *Id.* at 15–16. Second, he argues that his detention without a bond hearing violates 8 U.S.C. § 1231(a)(6) because his removal is not reasonably foreseeable ("Count Two"). *Id.* at 16–17. Third, he argues that his detention violates "various statutory due process rights guaranteed by the [Immigration and Nationality Act ("INA")]" because "detention renders him less able to assist in his own defense to deportation and communicate with counsel" ("Count Three"). *Id.* at 18. Fourth, he argues that his original removal order, the reinstatement of the removal order, and the "procedural fumbling" of the withholding-only proceedings violate the Administrative Procedure Act ("APA") ("Count Four"). *Id.* at 19. And fifth, he argues that his inability to challenge a procedurally invalid removal order violates the Suspension Clause of the Constitution ("Count Five"). *Id.* at 19–21.

For relief, Petitioner asks the Court to order his release or a bond hearing with an Immigration Judge. *Id.* at 21. Alternatively, Petitioner requests a hearing before the Court to determine whether Petitioner's detention is justified. *Id.* Petitioner also requests a declaratory judgment that his detention without a bond hearing violates the Due Process Clause, the INA, and the APA. *Id.* at 22. Petitioner further requests attorney's fees and costs under the Equal Access to Justice Act. *Id.*

3.      **ANALYSIS**

Federal Respondents argue that Schmidt is the only properly named respondent. ECF No. 11 at 8–9. They further argue that the Due Process

Clause does not entitle Petitioner to a bond hearing because though Petitioner's appeal may delay removal, it remains reasonably foreseeable and, alternatively, Petitioner's ongoing detention passes the required factored test. *Id.* at 9–15, 15–19 (citing *Mathews v. Eldridge,* 424 U.S. 319 (1976)). Lastly, Federal Respondents argue that the Court lacks jurisdiction over Counts Three, Four, and Five based on the INA's jurisdiction-stripping provisions. *Id.* at 24–27. The Court will address the threshold issue of proper respondents and then consider Petitioner's counts in reverse order.

### 3.1 Properly Named Respondents

Federal Respondents assert that only Schmidt is a properly named respondent as Petitioner's immediate custodian. ECF No. 11 at 8–9. Petitioner argues that Federal Respondents are properly named because "they are the only Respondents who make custodial decisions over Mr. Fuentes and can offer the relief he seeks," and Petitioner brings a "non-core" habeas challenge. ECF No. 15 at 7.

The Court agrees with Federal Respondents that they are improperly named in this action. When a habeas petition presents a "'core challenge'— that is, a challenge to 'present physical confinement,'" the proper respondent is the petitioner's immediate physical custodian. *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006) (quoting *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004)). In the context of a foreign national challenging his present confinement related to ongoing immigration proceedings (rather than challenging his ultimate removability), the immediate custodian rule applies. *Id.* at 952–53. Petitioner here fits squarely within this rule—he is challenging his present detention, not any ultimate withholding or deferral

of removal. *See generally* ECF No. 1. Accordingly, the Court will grant Federal Respondents' request and dismiss them from this action.

The United States District Court for the Eastern District of Wisconsin established a Memorandum of Understanding ("MOU") with the USAO[6] which states that "[t]he USAO agrees to respond to the substance of [§ 2241] petition[s] on behalf of the federal detainee's custodian *and* any federal respondents named in the petition." *See supra* n.6. In light of this, the Court will encourage the USAO to more clearly establish its position early on in a case, and to cite to the MOU when responding to § 2241 petitions on behalf of a detainee's custodians.

### 3.2 Counts Three, Four, and Five

Federal Respondents contend that 8 U.S.C. §§ 1231(a)(5) and 1252(b)(9) strip the Court of jurisdiction to consider Counts Three, Four, and Five. ECF No. 11 at 24–27. Petitioner acknowledges that these counts "may be subject to the INA's jurisdiction-stripping provisions." ECF No. 10 at 11. Nonetheless, Petitioner argues that the deprivations here "are so fundamentally unfair that the prohibition of habeas review violates the Due Process and Suspension Clauses." *Id.*

"[T]he courts of appeals have exclusive jurisdiction to review orders of removal" in immigration proceedings. *Ferreyra v. Barr*, 962 F.3d 331, 333 n.2 (7th Cir. 2020) (citing *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006)); *see also* 8 U.S.C. § 1252(a)(5). Seeking review of a removal order is

---

[6]*Memorandum of Understanding Regarding Habeas Corpus Petitions filed under 28 U.S.C. § 2241 – Federal Detainees*, U.S. DIST. CT. E. DIST. OF WIS., 1 (Dec. 10, 2025) (emphasis added) https://www.wied.uscourts.gov/sites/wied/files/general-ordes/12.10.25%20MOU%20between%20USDC%20and%20USAO%20re%2028%20USC%202241%20Petitions%20-%20Updated%20Ex%20A.pdf [https://perma.cc/AJ6U-XNA6] (last visited June 5, 2026).

distinct from a habeas corpus petition under 28 U.S.C. § 2241. *See Vargas v. Beth*, 378 F. Supp. 3d 716, 728 (E.D. Wis. 2019) ("While this court does not have jurisdiction to determine Vargas' removability, it may determine whether his claim is facially meritless." (citing *Gonzalez v. O'Connell*, 355 F.3d 1010, 1019–20 (7th Cir. 2004)).

A district court may entertain a § 2241 petition that "only challenges [Petitioner's] allegedly unlawful detention . . . and no other immigration decisions." *Neilova v. Noem*, 812 F. Supp. 3d 836, 838 (N.D. Ill. 2025) (citing *Valencia v. Noem*, No. 25 C 12829, 2025 WL 3042520, at *1–2 (N.D. Ill. Oct. 31, 2025); *H.G.V.U. v. Smith*, No. 25 CV 10931, 2025 WL 2962610, at *2–3 (N.D. Ill. Oct. 20, 2025); and *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *2–4 (N.D. Ill. Oct. 16, 2025)). The Court's review is limited to "the legality of [Petitioner's] detention" and "does not extend to the merits of [his] anticipated removal." *Id.* (citing 8 U.S.C. § 1252(g); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); and *Bayo v. Napolitano*, 593 F.3d 495, 500 (7th Cir. 2010)). "[I]ndirect challenges of a final removal order" are outside the district court's § 2241 purview. *Ferreyra v. Nielsen*, No. 18-CV-1005, 2018 WL 4496330, at *2 (E.D. Wis. Sept. 18, 2018) (citing *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012); and *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)); *see also Vargas*, 378 F. Supp. 3d at 721–22 (noting that district courts do not have jurisdiction over "repackaged challenges to removal").

Counts Three, Four, and Five do not challenge Petitioner's allegedly unlawful detention, they challenge the substance and procedure surrounding Petitioner's original and reinstated removal orders. As Petitioner implicitly acknowledges, ECF No. 10 at 11, the Court lacks

jurisdiction over these counts and is therefore constrained to dismiss them without prejudice.

### 3.3    Counts One and Two

Petitioner raises two due process challenges: first, Petitioner's "prolonged detention without a bond hearing violates procedural due process under *Mathews*." ECF No. 15 at 6 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Second, Petitioner's detention "is independently unlawful under *Zadvydas* because his removal is not reasonably foreseeable." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).

After a 90-day "removal period," certain foreign nationals who are inadmissible or removable "may be detained beyond the removal period" or may be released under terms of supervision. 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578–79 (2022). Section 1231(a)(6) provides one category of individuals who may be detained beyond the removal period, namely "individuals who are removed and who then reenter without authorization and apply for withholding of removal based on a fear that they will be persecuted or tortured if returned to their countries of origin." *Arteaga-Martinez*, 596 U.S. at 576 (citing *Johnson v. Guzman Chavez*, 594 U. S. 523, 526 (2021)).

Section 1231(a)(6) does not "specify how long detention past the 90-day removal period may continue." *Id.* at 578. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the U.S. Supreme Court determined that, "in light of the Constitution's demands," § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. Significantly, in *Zadvydas* "the government was unable to remove the petitioners within the normal

90-day removal period because it could not identify any countries willing to accept them, . . . leaving the petitioners in what the Supreme Court later characterized as a 'removable-but-unremovable limbo . . . .'" *Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024) (citing *Zadvydas*, 533 U.S. at 684–86 and quoting *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005)). "[T]he aliens challenging their detention following final orders of deportation were ones for whom removal was 'no longer practically attainable.' . . . The Court thus held that the detention there did not serve its purported immigration purpose." *Demore*, 538 U.S. at 527 (quoting *Zadvydas*, 533 U.S. at 690).

### 3.3.1 *Mathews* **factors**

Petitioner's detention without a bond hearing does not violate due process under *Mathews*. The parties disagree about the applicable standard.[7] *See* ECF No. 10 at 6; ECF No. 11 at 10–15; ECF No. 15 at 9–10 n.5. The Court will follow the Seventh Circuit's approach in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999) and apply the *Mathews* factors.

Under *Mathews*, the Court must evaluate three factors to determine whether the government has taken an individual's life, liberty, or property

---

[7]Petitioner's six-factor balancing test from *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019) has been abrogated by subsequent caselaw. *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) ("[*Zadvydas* and *Demore*] leave no room for a multi-factor 'reasonableness' test. It is true . . . that deciding what process is due ordinarily requires a form of interest balancing. But *Zadvydas* and *Demore* have already done whatever balancing is necessary." (internal citations omitted)); *see, e.g., Bonilla Espinoza v. Ceja*, No. 25-CV-01120-GPG, 2025 WL 4957947, at *13 n.10 (D. Colo. May 21, 2025) (In *Banyee* the Eighth Circuit "opted for the bright-line rule that the government can detain an alien for as long as deportation proceedings are still *pending*." (emphasis in original) (internal quotation marks omitted)).

without due process. *Mathews*, 424 U.S. at 335. "The Court must consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail." *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967, at *12 (E.D. Wis. Oct. 30, 2025) (citing *Mathews*, 424 U.S. at 335). Put differently, the Court evaluates "the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (citing *Mathews*, 424 U.S. at 335).

On the first *Mathews* factor, Petitioner asserts that his private interests are "liberty and freedom from torture." ECF No. 15 at 9–10 n.5. Petitioner does not explain how "freedom from torture" is at stake here; this Court's decision on the constitutionality of Petitioner's detention has no bearing on Petitioner's withholding-only proceedings. In a similar context, the Seventh Circuit articulated the private interest differently: "[t]he private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra*, 172 F.3d at 958. Here, Petitioner's private interest is liberty in the United States while he appeals the immigration judge's conclusion that he is not entitled to withholding or deferral of removal, which is more circumscribed than Petitioner contends.

On the second *Mathews* factor, Petitioner asserts "that the government errors increase the risk of erroneous deprivation." ECF No. 15 at 9–10 n.5. Respondents argue that there is no risk of erroneous deprivation because Petitioner does not claim that his detention is erroneous, only that it has been prolonged. ECF No. 11 at 17. Here, § 1231(a)(6) provides the Attorney General authority to continue detaining Petitioner. The government's delay-causing errors were resolved by September 2025; since then, Petitioner's requested extensions and appeal have prolonged his detention. Under these circumstances, the effect of additional procedural safeguards—here, a bond hearing—on the risk of erroneous deprivation of liberty would be minimal. *See Parra*, 172 F.3d at 958 ("The probability of error is zero when the alien *concedes* all elements that require removal.").

On the third *Mathews* factor, Petitioner argues that "a bond hearing minimally intrudes on the government's interest so long as it can prove Mr. Fuentes is a danger or flight risk." ECF No. 15 at 10 n.5. Respondents assert a substantial interest in "effectuating Petitioner's removal from the United States for a third time." ECF No. 11 at 18. In *Parra*, the Seventh Circuit described this interest as "powerful": "A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Parra*, 172 F.3d at 958; *Rojas*, 2025 WL 3033967, at *14 (E.D. Wis. Oct. 30, 2025). Accordingly, considering the *Mathews* factors, Petitioner's continued detention without a bond hearing does not violate due process.

### 3.3.2 *Zadvydas* standard

Separately, Petitioner asserts that his continued detention violates due process under *Zadvydas*. The Court in *Zadvydas* "held that six months is a presumptively reasonable period . . . . After that, . . . if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing then quoting *Zadvydas*, 533 U.S. at 699, 701).

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699–700.

Here, Petitioner has not met his burden of showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings*, 583 U.S. at 299 (citation omitted). Unlike the petitioners in *Zadvydas*, Petitioner is detained "pending the completion of withholding-only proceedings that he voluntarily initiated." *Castaneda*, 95 F.4th at 757. "[W]ithholding-only proceedings are *finite*." *Id.* (emphasis in original). "[O]ngoing withholding-only proceedings, even lengthy ones . . . do not, standing alone, cast doubt on the foreseeability of an alien's removal in the future." *Id.* at 757–58; *Lemus v. Warden*, No. 3:26CV47 DRL-SJF, 2026 WL 1703673, at *2 (N.D. Ind. June 12, 2026) ("Every circuit court that has considered the issue of detention after a reinstated removal order has concluded the relevant issue is not the potential length of withholding-only

proceedings, but rather whether removal can be carried out once the proceedings terminate." (citing *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020); *G.P. v. Garland*, 103 F.4th 898, 902 (1st Cir. 2024); and *Castaneda*, 95 F.4th at 758–59)). Although Petitioner's withholding-only proceedings have been delayed, Petitioner's detention "has a definite endpoint—the conclusion of his withholding-only proceedings." *Lemus*, 2026 WL 1703673, at *2; *c.f. Jennings*, 583 U.S. at 304.

At this stage, Petitioner's removal remains reasonably foreseeable, and the *Mathews* factors do not demonstrate that Petitioner's continued detention violates due process. To the extent that Petitioner's circumstances change, his continued detention could violate due process in the future. To that end, Counts One and Two will be dismissed without prejudice.

**4.  CONCLUSION**

For the reasons stated herein, Alberto Jovany Fuentes Santos's petition for a writ of habeas corpus will be denied without prejudice, and this case will be dismissed.

Rule 11 of the Rules Governing Section 2254 Cases—which this Court may apply to § 2241 cases, *see* Rule 1(b), Rules Governing Section 2254 Case—requires the Court to either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Such a certificate should only be issued where the petitioner has made a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Here, as explained in depth above, Petitioner's ongoing detention without a bond hearing does not offend the Due Process Clause and the Court lacks jurisdiction to consider his other arguments. The Court does not find any grounds to believe that reasonable jurists would debate this outcome. Accordingly, the Court declines to issue a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Respondents Samuel Olson, Markwayne Mullin, U.S. Department of Homeland Security, and Todd Blanche be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Alberto Jovany Fuentes Santos's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Alberto Jovany Fuentes Santos's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge